Good morning, Justices. My name is David Green, and I am from the lofts of Hohengreen representing Laquinn Fisher. I would respect two minutes for rebuttal. Three overarching themes to my remarks today, and they are my own terms. I apologize. But number one, the idea in this case of judicial scorekeeping. Number two, a question of where's the gun. And number three, does Arizona have a Supreme Court? The issue in this case is the qualified immunity question. I know this Court gets a lot of those questions. I'm sure you've read the order from the district court. The district court found that the officers were entitled to qualified immunity because plaintiff failed to establish the clearly established case law. I couldn't disagree with that more, primarily because of the buoy decision. I cited that a lot in my briefs, and because buoy is There's always a question about the level of generality. That's really where the problems often come up as to how precisely analogous the cases have to be. But my question about your position is more factual, and that is there was a firearm unaccounted for, and the possibility that there were additional people in the apartment who might have used a firearm, why isn't that factually a source of a reasonable person might have believed at that time that a sweep was permissible under buoy? I agree. And the question the Court's asking is basically to apply the buoy standards, which are there has to be specific, both specific and articulable facts that someone is opposing a danger to the officers or others. Right. And there's a loaded firearm unaccounted for, and the possibility of other people present in the same location as the firearm. Correct. And I know the Court has examined the findings by both the Arizona Court of Appeals and the Arizona Supreme Court. And you're aware that the Arizona Supreme Court said that there was no evidence. They held that there was no evidence supporting an articulable fact. The police didn't make one. And, yes, there is the connection that there was an unaccounted-for weapon. But the Court correctly pointed out, based on the buoy analysis, that there that doesn't justify a sweep, because a gun that's Which is why you prevailed in the Arizona Supreme Court. Now, the question is how established was that proposition that these officers should have known and should have anticipated the decision of the Arizona Supreme Court? I think that's impossible. But I think that Wait. It's impossible for the officers to have known? To have anticipated how the Supreme Court would have ruled? Well, if the officers can't anticipate, then why are we going to hold them liable for it? Only because they violated buoy. And buoy Counsel, under 1983, the whole question of qualified immunity is not whether you violated the Constitution. These officers violated the Constitution. That's why the evidence was suppressed. That's why your client was let out of jail. But under 1983, the officers are entitled to qualified immunity against personal liability to your client unless they violated clearly established Supreme Court law. And you just told me that nobody could have anticipated the decision of the Arizona Supreme Court. Well, if the officers couldn't have anticipated that decision, why are we holding them liable in tort? Well, I was going to explain that the officers, in order to establish the clearly established doctrine, we have to define the parameters such that a reasonable officer would understand what's required of them. And my position is that those officers should have known well before even the Fisher incident in 2006 that they cannot conduct a protective sweep absent specific inarticulable facts. The facts that – and this is critical because one of the facts that, pursuant to the Arizona Supreme Court decision, the only fact is the unaccounted for weapon. There is nothing to tie that weapon to a person. Well, what's interesting, though, is in the court of appeals decision that preceded that, the facts were stated differently. And it's because of the posture of the case we don't really know which of these things is correct because what's stated there is that the gun used in the aggravated assault was missing and the police were unsure whether there were additional – or whether the apartment harbored additional people. So a gun by itself, if you tell me, well, there's an unaccounted for gun and I think it's locked in this tiny little closet over here, that's one thing. But if it's potentially in the hands of a person who could use it, it's the individual who's dangerous because of the presence of the gun and not the other way around. So what do we make of the fact? Because we don't really have independently a way to know which is correct. Agreed. And I would point out two issues. Number one, the court of appeals analysis was overruled specifically by the Arizona Supreme Court, which I question – The analysis was, but it's unclear whether there was any overruling of that factual description of what had occurred. I would disagree only because the Arizona Supreme Court specifically found the only fact was the unaccounted for weapon. That explains why you win in the Arizona Supreme Court, and congratulations. The question is, were these officers supposed to have known that? And what case should they have been carrying in their pocket to – that they would have understood they were violating the Constitution when they conducted that protective sweep? Bowie. Because if they had read Bowie, they would have known they were wrong? If they had – But the Arizona Supreme Court cited – I mean, the Arizona court of appeals cited Bowie. It went through quite a bit of analysis of Bowie, but it didn't get it. But the officers should have gotten it? Yes. In part because the officers must have. It's a must, and it's a protective sweep under Bowie is justified only if you can articulate specific facts. The officers could articulate specific facts. There's a gun that's been used here. We had somebody who's been pistol whipped. We've – we don't know where the gun is, and we don't know whether there's anybody else in the apartment. And all we're going to do is we're not going to open up cupboards, because nobody could be in a cupboard, but we're just going to look through the apartment real quick just to make sure that we're not going to get ambushed while we're standing here talking to you. Well, and that was the – well, here's what I would say. An objective, reasonable officer should never rely on speculation. Is anybody in that house? They didn't know. They never articulated any fact whether someone was in there. So if you know that there's a weapon inside an apartment, and you don't have any idea how many people are in the apartment, and three people exit, but it's, you should just say, oh, well, I'm pretty sure there's nobody else in there, and, hey, there's a weapon, but so what? That's what they're required to do? I would argue under the U.S. Constitution, yes, because a warrantless search of a home is one of the chief evils that the Constitution protects. And that's quoting Mapp v. Ohio. So before officers can go into the home, they better have a good reason, and they better follow established case law, which BUI is. They must have an articulable fact. I agree with the finding of fact that the gun was missing. They never recovered a gun, incidentally. Well, what the Arizona Supreme Court said, it's really pretty interesting. I don't think they actually disagreed factually with the Court of Appeals, which said that there were two factors, one, the missing gun, and, two, there could be other people in the apartment. What they faulted the officers for precisely was, well, you didn't ask if there was anybody else in the apartment. And if you had asked, you would have known that there wasn't. That's the point where they don't disagree factually that the police thought there was somebody in there. They just said, well, you had to go through a different process to find out. You couldn't look. And so I guess it all comes down to whether that is something that the officers should have known, that they were required to ask before checking. I wouldn't go so far as to say they're required to ask, but I would say they're required to investigate in order to have some articulable fact. Well, they had a reason. You're just saying it wasn't a good enough reason. I don't believe they had a reason to suspect an individual was in the home. No, they didn't know one way or the other. Correct. And in order to go in for a protective sweep, they must have a specific articulable reason, which they didn't have. The only reason they went in there was because of an unarmed weapon. I would point out also that in the record, it says that as the three men exited the apartment, they complied and that they were, it said that no weapons were on them, which, and I may be stretching the record and I apologize, but it implies that some type of pat-down was conducted. So there was a period of time between that and one of the officers entering the home. That's a reasonable inference based on that. And, again, that's a factual finding from both the Court of Appeals and the Supreme Court. But there was no gun on them. Well, that makes it even scarier, doesn't it, that there's an apartment and the gun isn't coming out with the people. But, again, it presupposes that there was a gun in there. And it presupposes that Mr. Fisher was involved in that. What did the police know? They had the identification of somebody matching my client's description. They had the name Taz. They had his apartment complex and his car. And then the unaccounted-for weapon. Those were the facts, I believe. I've summarized both the Court of Appeals and the Arizona Supreme Court's what they analyzed. What of those facts imply that there is a gun in the home? None of them. I thought he'd been pistol whipped. The alleged victim claimed to have been. Well, yeah, but that's why the officers went over to the house was to find out whether there was anything to it. Correct. And what's also missing from the record is what did the officers do? Did they set up a perimeter? Did they really suspect there was a weapon in there? Did they call in backup? Was there a TV unit? Well, both of the Arizona courts accepted that they believed there was a weapon in there, so. They took a protective stance at the door. Correct. But did they relinquish that stance after the men came out? It says so after they complied. I understand the concern with a gun. Guns are dangerous. But there must be a reason that somebody else is in there. In the cases that have cited Bowie since, even before this and since the 2006 instance, always analyze, is there an articulable basis that someone is in the house, even if there's a firearm in there? And if there is not an articulable basis, the searches have precluded those evidence in the criminal context. So that's the exact analysis that Bowie requires. And that's the exact analysis I'm holding the officers to know that law. They should know it. Did you want to save some rebuttal time? I do. Okay. I do. I will. Thank you. Good morning, Your Honors. May it please the Court. My name is Jason Reed on behalf of the city of Mesa and the defendant officers. This Court should affirm the district court's order because two courts, the two panels for the Arizona Court of Appeals and the Supreme Court, considered the same facts, considered the same legal standard, had the time to consider those two things, had the resources and legal training to consider those two things, and came to two different conclusions. That is the hallmark of a situation where qualified immunity should be applied. Specifically, Supreme Court case law indicates when judges themselves cannot agree whether a constitutional right exists or not, that situation is a place where it would be improper to deny law enforcement officers qualified immunity, which is the exact situation that happened here. I wanted to touch upon a couple of points in the Court of Appeals and the Arizona Supreme Court's decision that emphasize that point. Specifically, the Arizona Court of Appeals relied on established case law, relied on Supreme Court case law, the Ninth Circuit case law, Sister Circuit case law, and Arizona State case law. It specifically applied BUI. Now, BUI does establish the general parameters, but as witnessed by 24 years of litigation since the issuance of BUI, that has not established a clearly established right in each and every circumstance. At that point, factual scenarios become very important to apply those general principles to see whether or not a situation applies. Another important aspect of the Court of Appeals decision specifically is it specifically recognized that it had not given any definitive guidance as to the impact of possible Confederates, possible unknown Confederates. And at that point, it went on to cite two Ninth Circuit cases where protected sweeps when there are unknown Confederates would be justifiable. And as such, the Court of Appeals rendered a well-reasoned decision based on, at that point, controlling precedent. Moving on to the Supreme Court, you have a couple of issues. I mean, first and foremost, it recognizes that it has never provided guidance with respect to the application of BUI. And at that point, it is embracing the fact that it has not provided the prospective guidance that would be required to negate the officer's qualified immunity. Second, it moves on to recognize that there are recognized exceptions. I mean, the Supreme Court, this circuit, other Federal circuits have – there's various exceptions to the warrant requirement. And it's – Well, this is all true. But if you read the Supreme Court's opinion, the Supreme Court of Arizona, they seem to be saying you should have known better. And that's really the essence of – the essence of immunity. Should have known better. Agreed. But at that point, we still have the fact that an established court, the Arizona Court of Appeals, took these same facts and reached a different conclusion. And moreover, to the Supreme Court – I don't see why that is conclusive. Based on the precedent, whether it be Wilson or Ashcroft v. Al-Kid, the Supreme Court is still training the legal background to understand these concepts. When they take a specific factual scenario and reach different conclusions, that is going to be a hallmark of the qualified immunity. And moreover, with the Arizona Supreme Court, even the cases that it relied on to reach its conclusions – one, for example, is the Archibald case, which was issued by the Sixth Circuit in 2009, three years after the incident in question here. Again, cannot provide that prospective guidance. It also relied on Murray. From this circuit, it was issued two years after the incident in question. Again, had problems with prospective guidance. At the end, they could not identify a case law from a controlling jurisdiction that placed the officers, or even advised the Arizona Court of Appeals, that this conduct would have been held unconstitutional. Kagan. So are you saying that once the Arizona Court of Appeals held that there was no violation, that therefore your clients were home free as far as the 1983 claim is concerned? Not home free. Variables of what the Supreme Court did. Not home free for purposes of the complete analysis, but is it a significant factor recognized by the Supreme Court and even the circuit? I mean, when officers are held to a different standard insofar that they're often dealing with the heat of the moment. At the time of the arrest, what are we going to do? What are we going to hear? And they don't have the legal background. When we back up and look at courts who are considering those facts, who have a much more substantial understanding of the law, the parameters of the law, and the legal requirements, yes, it's going to be recognized that a court holding that that is appropriate is going to weigh heavily in favor of qualified immunity. And even backing up here to the briefing, at one point we'd have to identify to negate the officer's qualified immunity a controlling case from a controlling jurisdiction that clearly put these officers on notice that the conduct was improper. That case has not been identified. Moreover, the Supreme Court recognizes that sister circuits may demonstrate with a consensus of cases, but even that, as Al Cross versus Al Kidd emphasized, that it clearly indicates extensive litigation. In this case, the Arizona Supreme Court relied on one case that had been issued by the Second Circuit less than a year before the case that it relied on primarily in reaching its holding. A single case from a sister circuit in this case would not give rise to the level of established consensus necessary to negate the officer's qualified immunity. Essentially, just a couple other points I wanted to hit upon is it seems primarily plaintiff's argument on this is Buie clearly established the right. The Supreme Court has counseled repeatedly about dangers of overgeneralizing principles, whether it be from Buie or any other constitutional case, and applying it to specific facts. As I mentioned a little bit before, we have 24 years of litigation following Buie to emphasize that point. If Buie had truly clearly established the right regarding a protective suite, all that litigation would have been obviated. The real issue is focusing on the facts, and that is a challenging aspect. And the only two panels of courts that have an opportunity to evaluate those facts were the Arizona Court of Appeals and the Arizona Supreme Court. And in this circumstance, because they analyzed the facts and came to different conclusions, that would be a hallmark of the qualified immunity analysis. And kind of going back to a case that was issued in 2012, Ryburn, I mean, the difficulty for judges to apply the qualified immunity to the specific facts is making comparative analogies to different cases. It's a challenge regardless. It's a challenge for judges. It's a challenge for lawyers. It's a significant challenge for police officers. In Ryburn, for example, the court noted that the officers were going to be entitled to qualified immunity despite the fact that precedent may have indicated things the other way. A reading of prior precedents may have indicated that the officers wouldn't be entitled to qualified immunity if the Supreme Court in that case held that it was. At this point, looking back at the standards for qualified immunity, qualified immunity is available for officers when an issue is not beyond debate. Another similar phrase is qualified immunity is available to all but the plainly incompetent or those who knowingly violate the law. At this point, there is no evidence that's been submitted to show that the officers are qualified either of those two prongs. But moreover, for plaintiff to satisfy their burden, they essentially have to argue that the Arizona court of appeals also either was incompetent or knowingly approved a violation of the law, at which case, because neither scenario could be supported by evidence, I respectfully ask this Court to affirm the district court's order. Thank you, counsel. Thank you for your time. Mr. Green, you have quite a bit of rebuttal time. Hence my term when I open judicial scorekeeping. There's no question that the analysis by the Arizona court of appeals has been directly overruled. In fact, the legal standard applied by the Supreme Court should you shouldn't factor in their analysis at all. Their rationale was bad. The good thing that they did do, and I will admit this, is they applied buoy. The Arizona Supreme Court applied buoy. This idea that it's not clearly established is just not true, because all the justices who looked at this case have applied buoy, including the district court judge. It proves that it was clearly established. The parameters of the case. But it doesn't show that we knew what it meant. Even though buoy is clearly established, nobody could dispute that, but so is the Fourth Amendment. We don't always know what the Fourth Amendment means, even though it's pretty well I would agree, but if we can't hold officers to a reasonable officer standard to know what they can and cannot do when they search people or their homes, then qualified immunity would almost apply in everything if we can't even define the Fourth Amendment. We do know, based on this idea that buoy isn't controlling, it is. It's a United States Supreme Court case. It's been cited in every Federal jurisdiction. Well, I don't think anybody's saying it's not controlling. They're just saying it's at such a high level of generality that it doesn't give an answer in every case. And so if there is confusion about how that case applies to a type of situation, then it's not necessarily clearly established at the lower level of generality, the greater level of specificity. I think that's really the question here. Nobody's really saying that buoy isn't the case to turn to. I would disagree inasmuch as buoy is clear as to what is required in order to conduct a legal protective sweep. You have to have articulable facts. And to hold officers to know what that means has been around since Terry stuffs began in the 60s. Officers have to have a reasonable suspicion. In fact, buoy is, I would call it the great-grandson of Terry. It's an evolution of the Terry Doctrine for officer safety. Officers know that. And I can imagine a scenario where officers are like, hey, should we go in this house or not? Well, I don't know. Should we? Sure, let's go in. That's a clear violation because there's no articulable facts to go in. And that's basically what the Arizona Supreme Court said with the exception of the unaccounted-for weapon. But there was no indication that anybody else was in there. If I compare the Fisher incident to the buoy incident, when buoy was decided, it's telling because buoy actually had an accomplice with him when they robbed, while armed, a store in Maryland. The witnesses said there were two people. They chased Mr. Buoy back to his house and went down the stairs and said, this is the police, come on up. And there was only one voice down there, and Mr. Buoy ended up coming up. But the officers searched that immediate area, and they found a red jumpsuit, which was also an indication that they didn't find anybody else. And, of course, the suppression of that, that they violated the search by finding the red jumpsuit, but the court said no because the officer did that because there was information there was an accomplice there. There was somebody else. In Mr. Fisher's case, the person who had allegedly been whistle-whipped said nothing of the effect. Thank you, counsel. Your time has expired. We appreciate both of your arguments very much. The case is submitted, and we stand adjourned for this morning's session.
judges: SCHROEDER, GRABER, BYBEE